**Elvenier OWENS, mother, et al., etc., Plaintiffs-Appellants,**

v.

**INTERNATIONAL PAPER COMPANY, Defendant-Appellee.**

No. 74–3646.

United States Court of Appeals, Fifth Circuit.

March 15, 1976.

Rehearing and Rehearing En Banc Denied May 3, 1976.

Boyce Holleman, Jim W. Rose, Gulfport, Miss., for plaintiffs-appellants.

Rae Bryant, Gulfport, Miss., for defendant-appellee.

Before GEWIN, COLEMAN and GEE, Circuit Judges.

GEE, Circuit Judge:

This wrongful death action under Mississippi law was brought by the statutory heirs and beneficiaries of young Ronald Owens, who was killed when the automobile he was driving struck a flatcar standing on a spur track where it crossed Old Highway 49, near Wiggins, Mississippi.[1] The trial judge granted an instructed verdict against plaintiffs at the close of their evidence on their theories that negligent location, construction and maintenance of the track proximately caused the accident. On appeal, plaintiff argues that: (1) the evidence presented was sufficient to establish a prima facie case of negligence on the part of the defendant in its operation of the spur track; (2) Miss. Code Ann. § 77-9-249 (1972) requires this case to be submitted to the jury to determine negligence and contributory negligence; (3) Miss. Code Ann. § 65-7-7 (1972) requires the defendant to prove its authority to construct the spur track across a public roadway; and (4) a prima facie case was presented that the defendant was negligent in failing to correct a dangerous situation of which it had notice.

On the evening of May 26, 1971, Owens, a recent graduate of high school, was test driving a Volkswagen with a view to purchasing it. The car was in good mechanical condition and the lights worked properly. Owens, who was very familiar with the road, was proceeding south on the asphalt highway in clear weather when he hit a black flatcar at approximately 9:00 p. m. and was apparently killed instantly. No witnesses to the accident were present, but photographs of the Volkswagen in evidence make clear that he struck with great force. There is no indication of any attempt on his part to slow his automobile before the collision and no evidence of any skid marks.

A warning sign was properly posted some 500 feet before the crossing. A sign reading "Mississippi Law Stop" was about 44 feet from the track, six feet closer to it than state law specifies. Topographical data presented by plaintiffs' highway engineer showed that the track lay at the bottom of a quarter-mile long, twenty-foot decline in the highway. For the last five-hundred feet to the crossing, however, the road became practically level, dropping only about two feet. The spur track, constructed by defendant International, led from the main railroad line to its plant across the heavily-traveled, state-aid rural road. Trees stood on both sides of the road at the crossing, which was not marked by lights or flares. International was responsible for maintenance of the track and posting any necessary warnings at the crossing.

The sheriff and a local resident testified that, when traveling down the hill, their lights did not strike the track until they were within fifty to one-hundred twenty feet of the crossing and that

1. Plaintiffs received a substantial sum from the railroad in exchange for a covenant not to sue and proceeded against this defendant, who built and maintained the spur.

stopping in time to avoid a collision would be difficult when moving at the speed limit of fifty m. p. h. They stated, however, that a train on the tracks was visible at night if it were moving or if the car obstructing the road were a boxcar, but that flatcars such as the one involved here were very hard to see. They did admit that such a car might be made out if one were especially careful.

On the night in question, a railroad crew left the cut of cars across the roadway while engaged in switching them. The flatcar had no bulkheads, and its end and wheel carriage apparently obstructed the southbound right lane of the highway. A fatal accident had occurred at the same crossing fifty-six days earlier when a car approaching from the other direction hit a train.

### Was Substantial Evidence of Defendant's Negligence Presented?

■ Plaintiffs' principal and strongest point of error asserts that their showing of defendant's negligence was sufficient strong to make a case for the jury, so that the instructed verdict was error. *What* they needed to prove to make a jury case is, of course, to be measured by Mississippi substantive law. *Whether* they proved such a case is a matter of federal procedural law, as we shall note later. We turn first to the Mississippi law governing railroad crossing collisions.

■ Over forty-five years ago the Supreme Court of Mississippi, in its *Holifield* opinion cited *infra*, laid down the principles which govern this case. As phrased in *Illinois Central RR v. Williams*, 242 Miss. 586, 595, 135 So.2d 831, 834 (1961), the most recent authority cited to us on the subject by either side, the governing state substantive rule is

the so-called occupied crossing doctrine, and the peculiar or dangerous environment exception to it. A rail-

road has the right to occupy a crossing for its legitimate purposes, and, while so occupying it, the carrier is not required to maintain lights on its cars or to station a man with a lantern at the crossing to give warning that it is obstructed by cars, unless the conditions and circumstances are such that the employees of the railroad know, or in the exercise of reasonable care and caution should have known, that a person driving upon the highway at a reasonable rate of speed in an automobile properly equipped with lights, and carefully operated, could not see, or might not be able to see, the cars in time to avoid a collision with them. *Gulf M. & N.R.R. Company v. Holifield*, 152 Miss. 674, 120 So. 750 (1929). To fall within the exception stated in Holifield, there must be "some peculiar environment which renders the crossing unusually dangerous."

■ Since the other elements of proof are not contested, whether or not plaintiffs prevail on this point comes down to whether they established by sufficient proof "a peculiar environment" at the crossing that night which rendered it unusually dangerous. Examples of conditions which qualify as creating a peculiar environment and satisfying the Mississippi rule are proof that the crossing in question was obstructed by a flatcar,[2] was preceded by a dip in the highway masking it from the headlights of the approaching car, and the customary warning sign was entirely absent[3] or proof that the crossing was 16.5 feet above the highway at a distance of 350 feet, so that less than 100 yards from the crossing a headlight beam would not only miss a standing railroad car on the crossing but the crossing itself, and that it had an acute angle of intersection, confusing lights in the vicinity, partial obstruction of vision by buildings, etc.[4] And the Mississippi Supreme Court was at least willing to assume arguendo, in

---

**2.** Obviously, because of its thin bed and want of siding, the most difficult type of railroad rolling stock to see.

**3.** *Boyd v. Illinois Central RR,* 211 Miss. 409, 52 So.2d 21 (1951).

**4.** *Illinois Central RR v. Williams,* 242 Miss. 586, 135 So.2d 831 (1961).

*Russell v. Mississippi Central RR*, 239 Miss. 741, 748, 125 So.2d 283, 285 (1960), that a steep descent to the track might of itself constitute such an environment of unusual danger:

> We will assume for the purpose of this opinion that if the evidence for appellants would have justified a finding that there was a steep hill descending from the east to a point near the crossing where the road became flat, or nearly flat, so that lights of a vehicle approaching the crossing from the east would not reveal the presence of the box car until the vehicle was within 30 to 100 feet of the crossing, then appellants would have brought their case within the exception to the rule, as stated above. If the oral testimony of the witnesses was all that was before the court it may be that appellants would have made out a case that would withstand a motion for a directed verdict. But even under the rule that the evidence must be viewed in the light most favorable to appellants, as already stated, appellants' proof did not make a case for the jury for the reason that photographs and engineer's plats shown by appellants reveal the physical facts. These photographs and plats and the testimony of appellants' engineer show that there is no steep hill as indicated by some of the oral testimony. It shows that the roadway descends slightly towards the crossing for about 600 or 700 feet and there is no abrupt dip sufficient to have an appreciable effect on headlights of an automobile approaching the crossing from the east. The testimony must yield to these physical facts.

■■■ It appears, however, that the state court has been unwilling to hold that the mere presence on the crossing of a flatcar, rather than a more visible obstruction, establishes an "unusual danger" exception to the occupied crossing doctrine. *Spilman v. Gulf & Ship Island RR*, 173 Miss. 725, 163 So. 445 (1935).[5] And this is about what plaintiffs' proof in our case comes down to. Testimony in the record establishes that the obstruction was a stationary black flatcar and that such a car is hard to see. To this, however, something more had to be added under Mississippi law to establish an environment of unusual danger, to take the case out of the occupied crossing doctrine. Plaintiffs advanced the theory that there was a steep grade down to the crossing. As in *Russell, supra*, however, so far from establishing any such thing as a declivity throwing headlights below the crossing until the approaching automobile was in "30 to 100 feet of the crossing," plaintiffs' own engineer established—and plaintiffs admitted at oral argument—that for the last 500 feet of young Owens' approach to the intersection the highway was practically level: its decline was uniform and averaged less than five inches per one hundred feet.[6] The district court correctly concluded that plaintiffs produced no evidence sufficient, under the controlling federal standards,[7] to take

---

5. Even if it were an exception, it seems doubtful that the nonrailroad defendant in this case could be found liable for such a transitory unusual factor of danger, there being no evidence that it knew that the obstruction was such a type of car.

6. Plaintiffs suggest also that the location of the final stop sign about 44 feet rather than the required 50 feet from the crossing may supply an additional factor of hazard or negligence. In the circumstances presented—no evidence of any attempt to stop, no skid marks, and a violent impact—this small variation in proper location of the sign could not have significantly increased the danger at the crossing or have been a cause of the accident. As to each, it was de minimis.

7. In *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969), this court stated:

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and

the case to the jury on the exception to Mississippi's occupied crossing doctrine.

### Plaintiffs' Other Points

Plaintiffs advance several subsidiary claims of error, none of which merit extended discussion.

[11] In two points, plaintiffs suggest that the court should have applied Mississippi procedural law to its treatment of the case. In the first, it is suggested that the court, in considering whether or not to grant a directed verdict at the close of plaintiffs' case should[8] "look solely to the testimony in behalf of plaintiff and accept that testimony as true," etc. In the second, Miss. Code Ann. § 77–9–249, which is said to require submission to the jury of all questions of negligence and proximate cause in crossing accidents where a motorist fails to stop, is advanced as preventing the directed verdict. These assertions must be rejected as attempts to apply state procedural rules to the judge-jury relationship in federal court. *Badger v. Louisville & Nashville RR*, 414 F.2d 880 (5th Cir. 1969); *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969).

■ Plaintiffs next advance Miss. Code Ann. § 65–7–7, a statute prohibiting obstructions to public highways, asserting that the statute prevented a directed verdict for defendant at the close of plaintiffs' case by requiring authorization for the construction of the spur line. Other difficulties with the point aside,[9] it was first raised in plaintiffs' motion for new trial, supported by an attorney's affidavit that his search of the county records had unearthed no recorded evidence of such an authorization, and the district judge rejected it on the ground that this did not qualify as new evidence justifying a new trial. Although his given reasons for the ruling suggest that he looked to state law to decide this question, nevertheless his ruling was correct and must be sustained because plaintiffs did not provide the requisite showing that they were excusably ignorant of this information until after trial and that they had employed reasonable diligence to ascertain it. *See United States v. 41 Cases, More or Less*, 420 F.2d 1126, 1132 (5th Cir. 1970). Plaintiffs' attempt on appeal to avoid this circumstance by recasting the point to assert a duty in defendant, independent of any evidence that authority for the spur was lacking, to go forward and prove some ignores even so casual a system of pleading as ours, under which the defendant is generally only required to defend against those faults with which he is charged.

■ Finally, plaintiffs assert that defendant was negligent in failing to correct a dangerous situation at the crossing of which it had notice, but their only evidence on this point was testimony that the defendant knew of another night accident at the same crossing fifty-six days before the accident involving plaintiffs' decedent. Plaintiffs presented no evidence, however, to suggest that the previous accident involved comparable circumstances. Indeed, the only significant detail provided about the previous accident was that it involved a car approaching the intersection from the opposite direction.

Affirmed.

---

the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

**8.** As stated in *Williamson v. Inzer*, 239 Miss, 707, 709, 125 So.2d 77, 78 (1960).

**9.** Among which are the question whether a railroad track is an obstruction, especially under the principle of *ejusdem generis* as applied to a statute which concerns one who "shall fell any bush or tree into any public highway . . . ., or obstruct the same in any manner whatever . . . .."

fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of