United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 21, 2003**

Charles R. Fulbruge III
Clerk

**United States Court of Appeals
for the Fifth Circuit**

_____

No. 02-60587
_____

JUDDSON W. KING,

Plaintiff-Appellant,

VERSUS

ILLINOIS CENTRAL RAILROAD
AND KENNETH M. ANDERS,

Defendants-Appellees,

_____

Appeal from the United States District Court
For the Southern District of Mississippi
_____

Before DAVIS, CYNTHIA HOLCOMB HALL[*] and EMILIO M. GARZA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Plaintiff, Juddson W. King (King), appeals the district court's judgment granting summary

judgment to the Defendants, Illinois Central Railroad Company (ICR) and Kenneth Anders (Anders),

dismissing all of King's claims arising out of an automobile-train collision at a railroad crossing. The

district court concluded that King failed to establish a genuine issue of material fact with respect to

his claims that ICR and the train engineer, Anders, were negligent. After a *de novo* review, we agree

with the district court's conclusions and, therefore, affirm.

_____

[*] Circuit Judge of the United States Ninth Circuit, sitting by designation.

-1-

I.

This case arises out of a train-automobile collision occurring in February 1997, at the Highway 27 railroad crossing (the "Crossing"), in Wanilla, Lawrence County, Mississippi. At approximately 8:50 p.m., King, driving a Ford Bronco at a speed of approximately 45 m.p.h., struck the eighteenth boxcar of ICR's train (the "Train") which occupied the Crossing at the time of the accident. The Train was moving at a speed of approximately 5 m.p.h. Anders was at the Train's controls as engineer at the time of the accident. King sustained severe personal injuries.

Three years after the accident, King filed suit in state court in Mississippi against ICR and Anders, contending that they were negligent in a number of respects. The defendants removed the case to federal court on the grounds of diversity. After the close of discovery, the defendants moved for summary judgment on all of King's claims. The district court granted the defendants' motion, dismissing all of King's claims.

In its opinion and order, the district court determined that King failed to raise a genuine issue of material fact tending to show that Anders or ICR was negligent. More particularly, the court concluded that Anders and ICR owed no duty to warn of the presence of the Train because the Train's presence in the crossing acted as sufficient warning of the danger under the "occupied crossing doctrine." The district court also determined that King failed to raise a genuine issue of material fact regarding whether ICR had notice of the alleged defect or malfunction in the signal prior to the accident. Regarding King's claim that Anders failed to maintain a proper look out or reasonable control of the Train, the district court concluded that King failed to establish that the Train crew would have responded differently had they seen the vehicle approaching because the crew was entitled to presume he would stop. Finally, the district court ruled that King's claim that ICR

-2-

negligently failed to use reflectors on the train was preempted under federal law. King filed a timely appeal from the district court's judgment.

## II.

### A.

Because this case was resolved on a motion for summary judgment, we review the district court's judgment *de novo*, applying the same standard as the district court. Ramirez v. City of San Antonio, 312 F.3d 178, 181 (5th Cir. 2002). We review the district court's evidentiary rulings for abuse of discretion. Celestine v. Petroleos de Venez. SA, 266 F.3d 343, 349 (5th Cir. 2001).

### B.

Because this is a diversity case, we apply Mississippi substantive law. Under Mississippi law, "ordinarily a train legitimately stopped or standing over a public crossing because of its tremendous size is all the warning the traveling public is entitled to." Clark v. Columbus & Greenville Ry. Co., 473 So.2d 947, 950 (Miss. 1985). This rule also applies when the train is occupying the crossing while it is moving. Spillman v. Gulf & S. I. R.R. Co., 163 So. 445 (Miss. 1935). In Mississippi Exp. R.R. Co. v. Summers, 11 So.2d 429 (Miss. 1943), the Mississippi Supreme Court explained that under the "occupied crossing rule":

> . . .a railroad company may leave its train, or any part of it, standing over a public crossing, **night or day, and whether light or dark, without any light or warning** of any kind to the traveling public; that the presence of the car or cars themselves is all the warning the traveling public is entitled to unless the conditions were unusual. . . Id. at 430. (emphasis added).

There is, however, a recognized exception to the "occupied crossing rule" where the railroad should foresee that a motorist using ordinary care may not see the train because of a peculiar environment or hazardous condition. Spillman, 163 So. 445. However, King has failed to come

forward with facts which would bring his case within this exception.

King argues that he should be excused from the "occupied crossing rule" because the accident happened at night. The Mississippi case law does not support King's argument.

Courts have only found the exception applicable where extraordinary physical environments or landscapes make the crossing difficult to see. For example, Mississippi courts make an exception where a vehicle approaches a crossing on a street with a steep and varied incline so that a vehicle's headlights do not strike the train's cars. Illinois Cent. R.R. Co. v. Williams, 135 So.2d 831, 837 (Miss. 1961). Likewise, a sharp curve in the road leading to the crossing, creating a trap for approaching drivers, constitutes a peculiar environment or hazardous condition taking the case outside of the scope of the occupied crossing rule. Green v. Gulf, Mobil & Ohio R.R. Co.,141 So.2d 216 (Miss. 1962). Similarly, a decline or dip in the street over the crossing such that a flatcar cannot be seen at night during heavy fog constitutes a peculiar environment or hazardous condition. Boyd v. Illinois Cent. R.R. Co., 52 So.2d 21, 25-27 (Miss. 1951). A physical obstruction blocking the view of the crossing may also constitute a peculiar environment or hazardous condition. Hales v. Illinois Cent. Gulf R.R. Co., 718 F.2d 138, 142-143 (5th Cir. 1983). However, the darkness of night is not a peculiar environment or hazardous condition. Owens v. Int'l Paper Co., 528 F.2d 606, 610 (5th Cir. 1976).

In Owens, we affirmed the district court's order granting an instructed verdict in favor of the defendant on the ground that the occupied crossing rule precluded recovery by plaintiffs. The plaintiffs were the survivors of Ronald Owens who was killed when the automobile he was driving struck a black flatcar on a spur track at 9:00 p.m. Plaintiffs argued that they made a sufficient showing of the defendant's negligence to raise fact issues requiring jury resolution.

In Owens, we stated that the record testimony established only that the black flatcar was on the track at night and that the flatcar was hard to see. We stated further that "something more had to be added under Mississippi law to establish an environment of unusual danger, to take the case out of the occupied crossing doctrine." Id. at 610. The plaintiffs attempted to bring their case within the peculiar environment or hazardous condition exception by showing a steep grade down to the crossing, but their own engineering expert testified that the highway was about level for the last 500 feet of Owens' approach. We concluded that, viewing the evidence in the light most favorable to the plaintiffs, Owen produced insufficient evidence for a jury determination on the exception to Mississippi's occupied crossing rule. Id. at 610-611.

King also argues that the district court was required to give his case to a jury under Mississippi Code Ann. § 77-9-249 which reads in pertinent part as follows:

> (3) In the trial of all actions to recover personal injury or property damages, sustained by any driver of such vehicles for collision of said vehicle and train in which action it may appear that the said driver may have violated any of the provisions hereof, the question of whether or not the said violation was the sole or approximate cause of the accident and injury shall be for the jury to determine. The violation of this section shall not of itself defeat recovery, and the question of negligence or the violation aforesaid shall be left to the jury; and the comparative negligence statutes and prima facie statute of this state shall apply in these cases as in other cases of negligence.

In Owens, we considered the identical argument and held that this statute established a state procedural rule that was not binding on a federal court. Id. at 611. In the instant case, King has failed to come forward with evidence that the crossing was difficult to see due to a peculiar environment or hazardous condition. Like the plaintiffs in Owens, King has relied on the fact that the accident occurred at night. Without more, this is not enough to establish an environment of unusual danger. Thus, King has failed to demonstrate that the occupied crossing rule does not apply

-5-

to his case and the district court correctly rejected King's claims, based on ICR's failure to warn.

III.

King next argues that the district court erred in concluding that no genuine issue of material fact existed as to his claim that ICR failed to properly maintain the crossing signal.

In order to hold ICR liable for failing to properly maintain the signal, King was required to show that ICR had either actual or constructive knowledge that the signal was malfunctioning. White v. Thomason, 310 So.2d 914, 916 (Miss. 1975).[1] King contends that he has met this burden. King bases his argument largely on evidence that the signal was malfunctioning *at the time of the accident*. While we are required to accept King's evidence as true for the purposes of reviewing the district court's ruling on the defendants' motion, the evidence is not probative of whether ICR had notice of the alleged malfunction *before the accident*. See Bacon, 91 F.2d at 175.

King also directs the court to the deposition testimony of Mrs. Peggy Lambert who testified that the light was malfunctioning two hours prior to the accident. Based on this testimony, King contends that ICR had notice of the defect prior to the accident because the Train went through the crossing twice that evening and that Anders, as the Train's engineer, knew or should have known

---

[1] In White v. Thomason, supra, the Mississippi Supreme Court considered whether a municipality could be held liable for injuries resulting from an accident involving a malfunctioning traffic light. Courts outside of Mississippi require the same showing where the accident involves a malfunctioning railroad signal. See Robinson v. Missouri Pac. R.R. Co., 16 F.3d 1083 (10th Cir. 1994) (applying Oklahoma substantive law); Robin Express Transfer, Inc. v. Canton R.R. Co., 338 A.2d 335, 342 (Md. 1975); Goldscheiter v. Baltimore & O. R. Co., 33 A.2d 477, 478 (Pa. Super. Ct. 1943); Teague v. St. Louis Southwestern Ry. Co., 36 F.2d 217, 218 (5th Cir. 1929) (applying Texas substantive law); Northern Pac. Ry. Co. v. Bacon, 91 F.2d 173, 175 (9th Cir. 1937) (applying Montana substantive law). Although there is no Mississippi case directly on point, White v. Thomason indicates that the Mississippi Supreme Court would likely follow this trend and require King to show that ICR had actual or constructive notice of the alleged malfunction.

that the signal was malfunctioning two hours before King's accident. However, Mrs. Lambert's deposition testimony is not properly before the court.

Mrs. Lambert's deposition was not offered in response to ICR's Motion for Summary Judgment. Rather, King came forward with this evidence for the first time in support of his Motion for Reconsideration. Though King's Notice of Appeal states that he is also challenging the district court's order denying his Motion for Reconsideration, he has made no argument to us challenging that order or challenging the district court's refusal to consider Mrs. Lambert's deposition. Thus, any argument that the Motion for Reconsideration was improperly denied has been waived by his failure to adequately brief it. See Kane Enters. v. MacGregor Inc., 322 F.3d 371, 376 n.3 (5th Cir. 2003). Accordingly, we will not consider Mrs. Lambert's deposition for the purposes of determining whether summary judgment was appropriately granted.[2]

King also argues that the court should infer that maintenance records and the signal, both of which were allegedly destroyed by ICR, would have supported his contention that the signal was negligently maintained. This is an evidentiary issue which is only reviewed for abuse of discretion. Celestine, 266 F.3d at 349.

Because this is a diversity suit we must determine, as a preliminary matter, whether to apply Mississippi law or federal law to the issue of spoliation. Generally, federal courts apply their own evidentiary rules in diversity matters. Washington v. Dep't of Transp., 8 F.3d 296, 300 (5th Cir.

---

[2] Even if we were to review the propriety of the district court's denial of King's Motion for Reconsideration based on Mrs. Lambert's deposition, the record demonstrates that Mrs. Lambert's deposition was taken several months before the court ruled on the defendants' Motion for Summary Judgment. Thus, the district court did not abuse its discretion in refusing to consider it as "newly discovered evidence" for the purposes of a motion for reconsideration under Fed. R. Civ. P. 59 (e).

1993). Evidentiary "presumptions" which merely permit an adverse inference based on unproduced evidence are, likewise, controlled by federal law. See Hebert v. Wal-Mart Stores, Inc., 911 F.2d 1044, 1047 (5th Cir. 1990) (holding that federal law controlled the applicability of the "uncalled-witness rule"); Morris v. Homco Int'l, Inc., 853 F.2d 337, 341 (5th Cir. 1988) (stating that federal law controlled whether plaintiff was entitled to an evidentiary presumption that unproduced business records would have been detrimental to the defendant's case). Accordingly, federal law governs whether the district court abused its discretion in rejecting King's spoliation argument.

An adverse inference based on the destruction of potential evidence is predicated on the "bad conduct" of the defendant. United States v. Wise, 221 F.3d 140, 156 (5th Cir. 2000) (citing Vick v. Texas Employment Comm., 514 F.2d 734, 737 (5th Cir. 1975)). Therefore, King must show that ICR acted in "bad faith" to establish that it was entitled to an adverse inference. Vick, 514 F.2d at 737.

Shortly after the accident and prior to ICR's destruction of the evidence, King's attorney apprised ICR of his representation of King. However, he made no contention that the signal malfunctioned at the time of the accident and made no request for access to ICR's records or to the signal. Almost three years after the accident, after the evidence of which King complains had already been destroyed, King informed ICR for the first time that he was seeking recovery based on an alleged signal malfunction. Thus, at the time ICR disposed of this potential evidence, it was unaware that it might be relevant to King's claims.

Moreover, ICR presented evidence showing that it disposed of the documents and the signal for innocuous reasons, further demonstrating that it lacked a "bad faith" motive for their destruction. The maintenance records about which King complains are records ICR is required to keep under federal regulation. 49 C.F.R. § 234.273. In accordance with this regulation, ICR keeps these records

for one year.  Thereafter, the records are destroyed as a part of routine file maintenance.  ICR presented evidence that the signal was likewise destroyed for a benign reason.  In September 1997, several months after the accident, ICR made an overall system upgrade to accommodate higher train speed.  As a part of the upgrade, a new signal was installed at the Crossing, and the old signal was sold as scrap.

Under these facts, the district court did not abuse its discretion by refusing to afford King an inference that the maintenance records or an inspection of the signal would establish that IRC had not properly maintained the signal.  Accordingly, King was not entitled to rely on this inference to create an issue of fact on this claim.

For these reasons, we conclude that King has failed to demonstrate a genuine issue of material fact regarding whether ICR had actual or constructive notice of the alleged defect in the signal.

IV.

Finally, King argues that the district court erred in concluding that his claim that the boxcars should have been equipped with reflectors was precluded by federal law.  If such a duty were imposed by Mississippi law, it is not expressly preempted by federal law because there is no federal law addressing the placement of reflectors on boxcars.  Missouri Pac. R.R.  v. R.R. Com. of Texas, 850 F.2d 264, 267 (5th Cir. 1988). King contends that his claim is also not subject to implied preemption because the federal government has given no indication that it intended to "occupy the field" of railroad safety.  However, we have recognized that the doctrine of implied preemption under federal railroad safety standards also arises "when the policymaker appears to be saying 'we haven't done anything because we have determined that it is appropriate to do nothing.'" Missouri Pac. Railroad, 850 F.2d at 268. (internal citations omitted).

In Missouri Pacific Railroad, the Texas Railroad Commission adopted a regulation requiring an occupied caboose capable of communicating with the locomotive be included on trains carrying hazardous materials and on certain trains over 2000 feet in length. Id. at 265-266, n.2. As in this case, no federal law directly addressed requiring a caboose. Id. at 267. We held, however, that the regulation was nonetheless preempted by federal law. In considering whether implied preemption precluded the regulation, this court examined a Federal Railroad Administration (FRA) background report concerning the use of end-of-train telemetry devices. The report noted that a major concern with allowing telemetry devices was that it would require the elimination of a caboose which would adversely affect safety. The FRA rejected this as a safety concern. The FRA noted in the report that no current FRA regulations required a caboose and that the determination of whether or not to use a caboose was made through the collective bargaining process. It concluded that the caboose issue was not a safety concern *per se* and refused to regulate the use of the caboose for this reason.

Based on this report, we concluded that the FRA had "fully considered the safety aspect of requiring cabooses and determined that the issue does not involve safety." Id. By doing so, the FRA necessarily decided that the use of cabooses was a matter to be dealt with through collective bargaining, rather than federal or state regulation. Id. at 267-268. Because the "FRA has determined it is appropriate for itself to do nothing about cabooses, and affirmatively has left the matter not to the states but to collective bargaining," the state regulation requiring the use of a caboose was implicitly preempted. Id. at 268.

With regard to reflectors on boxcars, the FRA funded a study in 1981 to examine whether the use of reflective material on railroad cars would reduce the number of accidents at highway and railroad crossings. While the FRA found that the use of reflective materials had merit, the rate of

-10-

degradation of the reflective materials due to the harsh railroad environment required frequent maintenance or replacement for long term effectiveness. Because of the problems with degradation, the FRA concluded that requiring such materials was unmanageable. Thus, the FRA decided that rule-making action was unwarranted at that time.

Because the FRA examined the issue and decided it should not promulgate regulations for the use of reflective materials on railroad cars, any Mississippi law addressing the issue is implicitly preempted under Missouri Pacific Railroad. In light of the above, the district court correctly concluded that King's claims based on failure to place reflectors on the boxcar were implicitly preempted under federal law.

V.

For the reasons stated above, we affirm the district court's order granting summary judgment to ICR and Anders on all of King's claims.

AFFIRMED.