# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60409

United States Court of Appeals
Fifth Circuit

**FILED**

July 31, 2017

Lyle W. Cayce
Clerk

SHAWN T. EZELL,

Plaintiff - Appellant

v.

KANSAS CITY SOUTHERN RAILWAY COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi

Before PRADO, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Plaintiff-Appellant Shawn Ezell drove his car into a stationary train that was blocking a traffic crossing. Ezell sued the train's operator, Defendant-Appellee Kansas City Southern Railway (KCSR), asserting various Mississippi common law negligence claims based on his allegations that the train blocked the crossing for an impermissible amount of time and the train's crew failed to adequately warn approaching drivers of the obstructed crossing. KCSR filed a motion for summary judgment, which the district court granted. We affirm.

**I**

In the early morning hours of July 12, 2011, a train operated by KCSR temporarily stopped in West Point, Mississippi, so the crew could perform a

switching operation.[1] The operation required the train to fully occupy and block three West Point traffic crossings. Ezell's expert estimates that the train was stopped in West Point for approximately 24 minutes.

While the crew was performing its switching operation, Ezell approached one of the blocked crossings in his car. He passed a reflectorized advanced warning sign, a reflectorized railroad crossing sign, and a yield sign. Although Ezell testified at his deposition that he does not recall seeing the signs on the night of the accident, he acknowledged that knew they were there because he had passed through the crossing many times and was familiar with it. Ezell also testified that the night was dark and "kind of . . . foggy." He described the road as having "a little dip" and then an incline leading to the tracks, which were elevated in comparison to the approaching road. Because of the incline in the road and the position of the black train car on the track, Ezell says his headlights shone under the train as he approached and that he could see beneath the stationary train car to the road on the other side.

According to Ezell, he did not see the train blocking his path until it was too late to stop. He crashed into its side, his car lodging beneath the train car he struck. Ezell was airlifted to a medical center for treatment and rehabilitation. He suffered horrific injuries and remained hospitalized for two months followed by a long rehabilitation process. As a result of the accident, Ezell is an "incomplete quadriplegic," meaning he suffers from severe paralysis throughout his body, but is not completely paralyzed and is able to walk with a walker, though not for long periods of time.

---

[1] "Switching" is the process of removing cars from the train to move them from the main line to an industry track or side track. "Side tracks are used to park a train going one direction on a main line while a train going the opposite direction passes. They can also be used as a detour to circumvent places on the main line where the tracks become unusable due to washouts, accidents, maintenance, etc." *Friberg v. Ks. City S. Ry. Co.*, 267 F.3d 439, 440 n.1 (5th Cir. 2001).

No. 16-60409

Ezell filed a lawsuit in Mississippi state court against KCSR, seeking damages based on various Mississippi common law negligence theories. Ezell alleges that the KCSR train crew "was careless, negligent and partially at fault" because the crew: (1) blocked the crossing for longer than permitted by Mississippi law; (2) blocked the crossing for longer than permitted by KCSR's internal operating rules; and (3) failed to adequately warn approaching drivers of the obstructed crossing.

KCSR removed the case to federal court based on federal question jurisdiction, arguing that Ezell's two blocking claims were completely preempted by the federal ICC Termination Act (ICCTA).[2] KCSR then moved for summary judgment on all of Ezell's claims. In addition to urging that Ezell's two blocking claims are preempted, KCSR argued that Ezell's failure to warn claim is barred by Mississippi's Occupied Crossing Rule. The district court granted KCSR's motion, and Ezell timely appealed.

---

[2] Ordinarily, "[u]nder the well-pleaded complaint rule, a federal court does not have federal question jurisdiction unless a federal question appears on the face of the plaintiff's well-pleaded complaint." *Elam v. Ks. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011). As a result, there is generally "no federal [question] jurisdiction if the plaintiff properly pleads only a state law cause of action." *Id.* (quoting *Gutierrez v. Flores,* 543 F.3d 248, 252 (5th Cir. 2008) (alteration in original)). However, "[a]n exception to the well-pleaded complaint rule," complete preemption doctrine, "arises when Congress 'so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Id.* (quoting *Gutierrez,* 543 F.3d at 252). Under the complete preemption doctrine, "what otherwise appears as merely a state law claim is converted to a claim arising under federal law for jurisdictional purposes because the federal statute so forcibly and completely displaces state law that the plaintiff's cause of action is either wholly federal or nothing at all." *New Orleans & Gulf Coast Ry. Co. v. Barrois,* 533 F.3d 321, 330 (5th Cir. 2008) (internal quotation marks and brackets omitted); *see also Franks Inv. Co. v. Union Pacific R.R. Co.*, 593 F.3d 404, 407–08 (5th Cir. 2010) (en banc) ("[Complete] preemption actually creates federal jurisdiction by its domination of the arena."). As explained in greater depth below, we have previously determined that state law tort claims arising out of the Mississippi statute relied on by Ezell for his first blocking claim are completely preempted, such that those claims give rise to federal question jurisdiction. *Elam*, 635 F.3d at 802 ("We hold the district court had removal jurisdiction over this action because the ICCTA completely preempts the [plaintiffs'] negligence per se claim.").

3

No. 16-60409

## II

We review a district court's grant of summary judgment de novo, applying the same legal standards as the district court. *Robinson v. Orient Marine Co.*, 505 F.3d 364, 365 (5th Cir. 2007). Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any reasonable inferences are to be drawn in favor of the non-moving party. *Robinson*, 505 F.3d at 366.

"Whether a state statute or common law cause of action is preempted by federal law is a question of law we review *de novo*." *Friberg*, 267 F.3d at 442; *accord Elam*, 635 F.3d at 802; *Franks*, 593 F.3d at 407. "The party asserting federal preemption has the burden of persuasion." *Elam*, 635 F.3d at 802 (citing *AT&T Corp. v. Pub. Util. Comm'n of Tex.*, 373 F.3d 641, 645 (5th Cir. 2004)).

## III

Two of Ezell's negligence claims are based solely on the allegation that KCSR's train blocked the three crossings for an impermissible amount of time. The first is a negligence per se claim based on KCSR's alleged violation of Mississippi's Anti-Blocking Statute, which prohibits trains from blocking crossings for longer than five minutes.[3] The second is a Mississippi common law negligence claim premised on KCSR's violation of its own internal operating rules, specifically General Code of Operating Rules 6.32.4, which directs crews to avoid blocking crossings in excess of ten minutes "when

---

[3] The statute provides in relevant part: "Every railroad company, upon stopping any train at a place where such railroad shall cross a highway, shall so uncouple its cars as not to obstruct travel upon such highway for a longer period than five (5) minutes." Miss. Code. Ann. § 77-9-235.

4

practical." The district court held that both claims are preempted by the ICCTA. We agree.

The ICCTA, 49 U.S.C. § 10101, *et seq.*, overhauled federal railroad regulatory policy and established the Surface Transportation Board (STB), which is tasked with regulating rail transportation throughout the United States. *PCI Trans., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 538 (5th Cir. 2005). "The purpose of the ICCTA is to 'build[] on the deregulatory policies that have promoted growth and stability in the surface transportation sector,'" and, specifically, "to implement a '[f]ederal scheme of minimal regulation for this intrinsically interstate form of transportation,' and to retain only regulations 'that are necessary to maintain a safety net or backstop of remedies to address problems of rates, access to facilities, and industry restructuring.'" *Elam*, 635 F.3d at 804 (quoting H.R. Rep. No. 104-311, at 93, 96 (1995); 1995 U.S.C.C.A.N. 793, 805, 808).

Section 10501(b) of the ICCTA "defin[es] the authority of the STB in dealing with the fundamental aspects of railroad regulation, and bar[s] others from interfering with those decisions by making the jurisdiction exclusive." *Franks*, 593 F.3d at 410. Section 10501(b) additionally makes clear that the "remedies available at the STB dealing with 'rates, classification, rules, . . . practices, routes, services, and facilities of such carriers,' are exclusive." *Id.* at 409; *accord Elam*, 635 F.3d at 805. We have observed that "[t]he language of the statute could not be more precise, and it is beyond peradventure that regulation of . . . train operations, as well as the construction and operation of . . . side tracks, is under the exclusive jurisdiction of the STB unless some other provision of the ICCTA provides otherwise." *Friberg*, 267 F.3d at 443. Thus, we have held that § 10501(b) expressly preempts "laws that have the effect of managing or governing rail transportation[.]" *Franks*, 593 F.3d at 410. Further, "'[t]o the extent remedies are provided under laws that have the effect

of regulating [i.e., managing or governing] train transportation,' they too are expressly preempted." *Elam*, 635 F.3d at 805 (quoting *Franks*, 593 F.3d at 410) (alterations in original).

We have emphasized that "Congress was particularly concerned about state *economic* regulation of railroads when it enacted the ICCTA." *Id.* On the other hand, § 10501(b) "does not expressly preempt generally applicable state laws that have a mere 'remote or incidental effect on rail transportation.'" *Id.* (quoting *Franks*, 593 F.3d at 410).[4] Nonetheless, a state law claim that is not expressly preempted by the ICCTA may be impliedly preempted, such as when, as applied in a particular case, the claim has "the effect of unreasonably burdening or interfering with rail transportation." *Franks*, 593 F.3d at 414.

Based on the scope, purpose, and jurisdictional statement of the ICCTA, we have previously invalidated state laws and claims that regulate the amount of time trains block crossings. *See, e.g.*, *Friberg*, 267 F.3d at 443–44.[5] We explained that "[r]egulating the time a train can occupy a rail crossing impacts, in such areas as train speed, length, and scheduling, the way a railroad operates its trains, with concomitant economic ramifications . . . ." *Friberg*, 267

---

[4] *See also Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001) ("Congress narrowly tailored the ICCTA pre-emption provision to displace only 'regulation,' i.e., those state laws that may reasonably be said to have the effect of 'manag[ing]' or govern[ing]' rail transportation, . . . while permitting the continued application of laws having more remote or incidental effect on rail transportation." (internal citations omitted)).

[5] *See also Pace v. CSX Transp., Inc.*, 613 F.3d 1066, 1070 (11th Cir. 2010) ("[T]o permit monetary liability to accrue under a state law nuisance claim where that liability is based on decisions the ICCTA purposefully freed from outside regulation would contradict the language and purpose of the ICCTA. The ICCTA expressly preempts state remedies involving the operation of the side track. Therefore, we will not permit landowners to circumvent that Congressional decision through state law nuisance claims."); *Rushing v. Ks. City S. Ry. Co.*, 194 F. Supp. 2d 493, 499 (S.D. Miss. 2001) ("[A]lthough the relevant Mississippi laws of negligence and nuisance may be construed as a exercise of the police power of the state to safeguard the health and safety of its citizens, the Plaintiffs are attempting to use these laws to impose regulations on the Defendant regarding the manner in which it operates its switch yard thereby potentially interfering with interstate rail operations.").

F.3d at 443. Indeed, in *Elam v. Kansas City Southern Railway*, we held that a negligence per se claim based on the precise Mississippi Anti-Blocking Statute at issue here was completely preempted by the ICCTA. 635 F.3d at 807–08. We agree with the district court that *Elam* squarely forecloses Ezell's negligence per se claim based on the Mississippi Anti-Blocking Statute.

Our analysis in *Elam* makes clear that Ezell's blocking claim based on KCSR's internal operating rules is preempted by the ICCTA as well. Like his negligence per se claim, Ezell's second blocking claim is based solely on the amount of time that KCSR's train blocked a crossing, and "the effect of [such a] claim is to economically regulate KCSR's switching operations." *Id.* at 807; *see also id.* ("[A] state law tort remedy that would directly regulate a railroad's switching rates and services falls squarely under § 10501(b) . . . . [because] a rail operator's decisions about switching rates and services are economic decisions." (citing *Friberg*, 267 F.3d at 444)); *Franks*, 593 F.3d at 411 ("It is clear that a tort suit that attempts to mandate when trains can use tracks and stop on them is attempting to manage or govern rail transportation in a direct way[.]"); *Friberg*, 267 F.3d at 443 ("[N]or does the all-encompassing language of the ICCTA's preemption clause permit the federal statute to be circumvented by allowing liability to accrue under state common law, where that liability arises from a railroad's economic decisions such as those pertaining to train length, speed or scheduling.").

Ezell has not attempted to distinguish *Elam* or this court's other ICCTA preemption caselaw. Instead, he cites the preemption clause of a different federal railroad regulatory statute, the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20101, *et seq.*, as his sole argument for why his blocking claim based on KCSR's operating rules is not preempted by the ICCTA. The FRSA's preemption clause clarifies that a state law claim is not preempted by that statute if the claim is based on operating rules adopted pursuant to an order

or regulation issued by either the Secretary of Transportation or the Secretary of Homeland Security. 49 U.S.C. § 20106(b)(1)(B). Ezell does not explain how or why the FRSA's preemption clause would bear on our ICCTA preemption analysis, nor does he acknowledge that the preemption exception he relies on to rebut KCSR's ICCTA argument is from a different statute. Notably, even if Ezell were to convince us that the FRSA's preemption exception could save his blocking claim from ICCTA preemption, he has failed to show that the KCSR operating rule he cites qualifies as a "plan, rule, or standard that is created pursuant to a regulation or order of the Secretaries." 49 U.S.C. § 20106(b)(1)(B). Ezell's FRSA argument is unavailing, and we conclude that both blocking claims are preempted by the ICCTA.[6]

## IV

Ezell also alleges that KCSR "failed to adequately warn motorist[s] on North Division Street of the obstructed crossing by a train." We agree with the district court that this claim is barred by Mississippi's Occupied Crossing Rule. "Under Mississippi law, 'ordinarily a train legitimately stopped or standing

---

[6] We note that the FRSA may inform ICCTA preemption analysis in some circumstances. Caselaw from this circuit and others has highlighted the complicated relationship between the two statutes and the difficulty that may arise when a state action or common law claim falls at the intersection of ICCTA's realm of economic regulation and the FRSA's realm of safety regulation. *See, e.g., Elam*, 635 F.3d at 807–08 ("To be sure, not every state law targeting rail operations is completely preempted by the ICCTA. Under the standards we have discussed, the ICCTA will not completely preempt valid exercises of a state's police powers in most cases. Indeed, the [FRSA] expressly provides that states may enact (and citizens may enforce) rail safety laws in certain circumstances."); *Tyrell v. Norfolk S. Ry. Co.*, 248 F.3d 517, 522–23 (6th Cir. 2001) ("[T]he district court's decision erroneously preempts state rail safety law that is saved under FRSA if it tangentially touches upon an economic area regulated under the ICCTA. . . . [T]he ICCTA and its legislative history contain no evidence that Congress intended for the STB to supplant the FRA's authority over rail safety."). In some cases, it may be difficult to discern whether a particular state law or claim is better characterized as an economic or safety regulation. But, as discussed, we have already determined that claims based solely on how long a train blocks a crossing are economic regulations preempted by the ICCTA. *See Elam*, 635 F.3d at 814 n.13 ("To the extent the Elams allege KCSR was negligent solely because it blocked the . . . crossing, that claim is impliedly preempted.").

over a public crossing because of its tremendous size is all the warning the traveling public is entitled to.'" *King v. Ill. Cent. R.R.*, 337 F.3d 550, 553 (5th Cir. 2003) (quoting *Clark v. Columbus & Greenville Ry. Co.*, 473 So. 2d 947, 950 (Miss. 1985)). Under this doctrine, the Occupied Crossing Rule,

> a railroad company may leave its train, or any part of it, standing over a public crossing, night or day, and whether light or dark, without any light or warning of any kind to the traveling public; that the presence of the car or cars themselves is all the warning the traveling public is entitled to unless the conditions were unusual.

*Miss. Exp. R.R. Co. v. Summers*, 11 So. 2d 429, 430 (Miss. 1943).

However, there is an exception to the rule when "the railroad should foresee that a motorist using ordinary care may not see the train because of a peculiar environment or hazardous condition." *King*, 337 F.3d at 553. Put another way:

> A railroad has the right to occupy a crossing for its legitimate purposes, and, while so occupying it, the carrier is not required to maintain lights on its cars or to station a man with a lantern at the crossing to give warning that it is obstructed . . . by cars, *unless the conditions and circumstances are such that the employees of the railroad know, or in the exercise of reasonable care and caution should have known*, that a person driving upon the highway at a reasonable rate of speed in an automobile properly equipped with lights, and carefully operated, could not see, or might not be able to see, the cars in time to avoid a collision with them.

*Owens v. Int'l Paper Co.*, 528 F.2d 606, 609 (5th Cir. 1976) (quoting *Ill. Cent. R.R. v. Williams*, 135 So. 2d 831, 834 (Miss. 1961)) (emphasis added).

To invoke this exception, the Mississippi Supreme Court has emphasized that plaintiffs must show the existence of "unusual hazards" and "peculiar conditions," *Boyd v. Ill. Cent. R.R. Co.*, 52 So. 2d 21, 25 (Miss. 1951), and the court has described the factual inquiry as one to determine "whether [the] crossing was more than ordinarily hazardous or dangerous," *Williams*, 135 So. 2d at 835. We have interpreted this exception to be narrow, explaining that

"there must be some peculiar environment which renders the crossing unusually dangerous." *Owens*, 528 F.2d at 609 (internal quotation marks omitted).  Further, we have cautioned that Mississippi courts set the bar high and "have only found the exception applicable where extraordinary physical environments or landscapes make the crossing difficult to see." *King*, 337 F.3d at 553.

Ezell argues that the Occupied Crossing Rule should not bar his failure to warn claim because of the conditions present on the night of the accident. In sum, the conditions described by Ezell are a "kind of" foggy night, darkness around the area of the track, a small dip in the road followed by an incline to the track, a black train car, and that he could see a traffic light beyond the railroad track. Although the conditions described by Ezell do resemble facts present in some of the cases in which Mississippi courts applied the exception, those cases involved a number of additional hazardous conditions that are not present here and which rendered the conditions more clearly "peculiar" and "unusually dangerous." *See, e.g.*, *Boyd*, 52 So. 2d at 22 (observing that, in addition to a "slight dip" in the road, there was also no warning of any kind of the approaching crossing (in violation of state law), and the only visible part of the train blocking the crossing was the narrow, 15-18 inch bed of an empty flatcar with its wheels positioned so that they were not visible to approaching drivers and there was no light at all); *Williams*, 135 So. 2d at 835 (observing that the approach to the crossing was an "abruptly steep and varied incline," which, combined with the unusually high grade of the crossing, created a particularly hazardous approach).

We agree with the district court that, even taking all of Ezell's allegations to be true, his summary judgment evidence fails to show that the conditions on the night of the accident were "peculiar" and "unusually dangerous" such that application of this narrow exception is appropriate.

No. 16-60409

*Owens*, 528 F.2d at 609. As explained, the bar for the exception is high, and Ezell's evidence does not show "extraordinary physical environments or landscapes." *King*, 337 F.3d at 553. The relatively ordinary conditions described by Ezell do not meet this threshold. Thus, the Occupied Crossing Rule bars his failure to warn negligence claim.[7]

## V

Accordingly, we AFFIRM the district court's judgment.

---

[7] At oral argument, KCSR invoked a recent Mississippi Supreme Court decision to argue that our Occupied Crossing Rule analysis cannot consider hazardous factors that the railroad cannot control, such as the conditions or characteristics of the road leading the crossing. Because we find that the Occupied Crossing Rule bars Ezell's claim regardless of which of the alleged conditions we consider, we need not reach KCSR's argument.