Laura ZUBULAKE, Plaintiff,

v.

UBS WARBURG LLC, UBS Warburg, and UBS AG, Defendants.

No. 02 Civ. 1243(SAS).

United States District Court, S.D. New York.

May 13, 2003.

James A. Batson, Christina J. Kang, Liddle & Robinson, LLP, New York, New York, for Plaintiff.

Kevin B. Leblang, Norman C. Simon, Kramer Levin Naftalis & Frankel LLP, New York, New York, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

On March 18, 2003, Laura Zubulake moved for an order compelling UBS Warburg LLC, UBS Warburg, and UBS AG (collectively, "UBS") to produce certain e-mails. That motion is the subject of a companion Opinion and Order issued today. Zubulake also moved for an order directing UBS to reimburse her for the costs of the deposition of Christopher Behny. That motion, however, was withdrawn at a March 26, 2003, conference.[1] Finally, Zubulake moved for an order permitting her to release the transcript of Behny's deposition to securities regulators.

1. *See also* 4/2/03 Letter from James A. Batson, Plaintiff's counsel, to the Court.

For the reasons that follow, that motion is denied.

## I. BACKGROUND

The general background of this case and Zubulake's motions is set forth in the accompanying Opinion, familiarity with which is assumed. The following facts, however, are relevant to the Behny deposition motions.

On December 2, 2002, the parties appeared before United States Magistrate Judge Gabriel W. Gorenstein to address the e-mail dispute. At that conference, Judge Gorenstein reserved judgment and instead ordered UBS to produce an individual knowledgeable about UBS's e-mail retention and retrieval policies. On January 14, 2003, UBS produced Christopher Behny, Manager of Global Messaging, for deposition via teleconference. At the deposition, Behny testified to the structure of UBS's backup system, its backup tape destruction/retention policy, and the feasibility and estimated cost of restoring the data that Zubulake had requested.

Upon review of the Behny deposition—the contents of which were designated by UBS as confidential, pursuant to a May 20, 2002, Confidentiality Stipulation and Order—Zubulake concluded that UBS was in violation of section 17(a) of the Securities Exchange Act of 1934 and SEC Rule 17a–4 promulgated thereunder, which impose certain document retention obligations on brokerage firms.[2] Subsequently, three senior UBS employees—Matthew Chapin, Jeremy Hardisty, and Dominic Vail—gave deposition testimony stating that, as registered broker-dealers, they have a continuing obligation to report violations of Rule 17a–4 to the appropriate regulatory bodies.[3] Such regulators include the Securities Exchange Commission ("SEC"), as well as the National Association of Securities Dealers ("NASD"), and the New York Stock Exchange ("NYSE"), both of which require compliance with all SEC rules and regulations, including Rule 17a–4.[4]

Relying on those representations, Zubulake (herself a licensed broker) now asks the Court to permit her to disclose the Behny deposition to the NYSE and NASD so that she may discharge her ethical obligation.

## II. LEGAL STANDARD

Although parties are free to enter into stipulations of confidentiality, "[t]he management of discovery lies within the sound discretion of the district court."[5] Thus, "[i]t is well-established that a district court retains the power to modify or lift confidentiality orders that it has entered,"[6] a power also explicitly recognized by the parties' confidentiality agreement in this case.[7]

When the designation of material as confidential is disputed, the court must weigh one party's "good cause" for requesting confidentiality against the other party's interest in disclosure.[8]

## III. DISCUSSION

In this case, UBS has designated the Behny deposition as confidential because it "contains information concerning UBS's tech-

---

**2.** SEC Rule 17a–4 provides, in pertinent part:

Every [ ] broker and dealer shall preserve for a period of not less than 3 years, the first two years in an accessible place ... [o]riginals of all communications received and copies of all communications sent by such member, broker or dealer (including inter-office memoranda and communications) relating to his business as such.

17 C.F.R. § 240.17a–4(b) and (4).

**3.** *See* 2/12/03 Deposition of Matthew Chapin at 101, Ex. H to the Affirmation of James A. Batson; 2/26/03 Deposition of Jeremy Hardisty at 73–75, Ex. A to the 4/2/03 Letter from James A. Batson to the Court; 3/6/03 Deposition of Dominic Vail at 253, Ex. B to the 4/2/03 Letter from James A. Batson to the Court.

**4.** *See* NYSE Rule 440; NASD Rule 3110.

**5.** *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 561 (2d Cir.1997).

**6.** *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 784 (3d Cir.1994) (citing *In re Agent Orange Prod. Liab. Litig.,* 821 F.2d 139, 145 (2d Cir.1987)). *See also Liveware Publishing, Inc. v. Best Software, Inc.,* 252 F.Supp.2d 74, 79 (D.Del. 2003).

**7.** *See* 5/20/02 Confidentiality Stipulation and Order ("All Confidential Information ... shall (unless necessary to comply with any court order ...) not be disclosed....").

**8.** *See Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir.1995) (identifying seven factors to be weighed in applying this balancing test). *See also* Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts,* 105 Harv. L.Rev. 427, 432–33 (1991).

nological capabilities and practices that, if released, would create a competitive disadvantage for the firm."[9] Although this claim seems dubious—the Behny deposition merely outlines UBS's electronic document retention protocol—I do not know what is or is not proprietary in the world of investment banking. Having fully reviewed the Behny deposition, I cannot say with certainty that its contents are not proprietary. If UBS claims that secrecy is necessary to maintain its competitive advantage, I have no basis on which to disagree.

In any event, Zubulake does not question the initial designation. Rather, she claims that she has a reporting obligation that trumps UBS's concerns. In support of this proposition, Zubulake relies on (1) the testimony of Messrs. Chapin, Vail and Hardisty; (2) NYSE Rule 351; and (3) NASD Rule 3070. Of course, Chapin, Vail and Hardisty are neither lawyers nor compliance officers. The fact that they believe a duty exists does not make it so. If Zubulake really has a duty to disclose violations of SEC Rules, that duty must be imposed by the SEC, the NYSE, or the NASD.

> The NYSE rule cited by Zubulake require: Each *member* not associated with a member organization ... shall promptly report to the Exchange whenever such member or member organization, or any member ... has violated any provision of any securities law or regulation ...[10]

And the NASD rule provides:

> Each *member* shall promptly report to the Association whenever such member or person associated with the member ... has

been found to have violated any provision of any securities law or regulation....[11]

The critical question, then, is whether Zubulake is a "member" of the NYSE or NASD. If she is, then she has a reporting obligation; if not, then she has not proffered any duty to disclose.

The NYSE rules define the term "member" as "a natural person who is a member of the Exchange."[12] This begs the question, who is "a member of the Exchange"? According to Article II of the NYSE Constitution, "the membership of the Exchange shall consist of: (a) 1366 regular members ... (b) such number of physical access members, not to exceed twenty-four (24) ... and (c) such number of electronic access members as the Board may from time to time determine."[13]

Zubulake is not one of the 1,366 listed "regular members" of the NYSE,[14] nor is there any indication that she is an "electronic access member,"[15] or a "physical access member."[16] That being so, Zubulake has no reporting duty under NYSE Rule 351(a).

Similarly, under the NASD Rules, "[t]he term 'member' means any individual, partnership, corporation or other legal entity admitted to membership in the [NASD] under the provisions of Articles III and IV of the By–Laws."[17] Under Articles III and IV, "any person" is eligible for NASD membership,[18] and a list of all admitted members is maintained for public reference by the Secretary of the NASD.[19] Zubulake is not on that list,[20] and so she is not a member of the NASD. NASD Rule 3070, therefore, imposes no reporting obligations on Zubulake.

9. 4/4/03 Letter from Kevin B. Leblang, Defendant's counsel, to the Court.

10. NYSE Rule 351(a) and (1) (emphasis added).

11. NASD Rule 3070(a) and (1) (emphasis added).

12. NYSE Constitution, Article I, ¶ 1003. *See also* NYSE Rule 2 (defining the term "member" as used in the NYSE Rules according to Article I, ¶ 1003 of the NYSE Constitution).

13. NYSE Constitution, Article II, ¶ 1051(a)-(c).

14. *See* 1 NYSE Guide (CCH) ¶ 609, at 211–48 (2003) (listing all NYSE members); http://www.nyse.com/members/members.html

(same). *See generally* NYSE Constitution, Article III, ¶ 1051(a) (describing regular membership in the NYSE).

15. *See* NYSE Constitution, Article I, ¶ 1003(e).

16. *See id.* ¶ 1003(m).

17. NASD Rule 0120(i).

18. NASD By–Laws, Article III, Sec. 1(b).

19. *See* NASD By–Laws, Article IV, Sec. 4.

20. *See* NASD Manual (CCH) ¶ 380, at pp. 511–717 (2002) (listing all NASD members).

In the absence of a clear professional duty, the only obvious reason for Zubulake to disclose this material to regulators is to gain leverage against UBS in this action. As a general rule, though, a party to civil litigation cannot threaten to instigate criminal charges solely to gain a strategic advantage.[21] The logic of this rule applies with equal force to threats of regulatory enforcement. The analogy is especially apt where, as here, regulatory enforcement can result in industry-wide "censure" and fines upward of one million dollars.[22] In the absence of a clear duty to disclose, therefore, there is no basis for lifting the confidential designation of the Behny deposition.[23]

## IV. CONCLUSION

Because Zubulake is not a member of either the NYSE or the NASD, the reporting regulations upon which she relies do not apply to her. Having proffered no reason for disclosing the contents of the Behny deposition other than NYSE Rule 351 and NASD Rule 3070, her motion is denied. Furthermore, the March 17, 2003, Affirmation of James A. Batson and the March 21, 2003, Declaration of Kevin B. Leblang—both of which contain excerpts from the Behny deposition—are ordered sealed.

A conference is scheduled in Courtroom 12C at 4:30 p.m. on June 17, 2003.

---

**21.** *See* N.Y.Code of Professional Responsibility Ethical Consideration 7–21 (1998); *id.* D.R. 7–105, *codified at,* 22 N.Y.C.R.R. § 1200.36.

**22.** *See, e.g., In the Matter of Deutsche Bank Sec., Inc.,* Exchange Act Release No. 46937 (Dec. 3, 2003), *available at,* http://www.sec.gov/litigation/admin/34–46937.htm.

**23.** By referencing the above-cited ethical canons, I do not suggest that Zubulake's counsel has acted unethically.