**CONSOLIDATED ALUMINUM
CORPORATION,**

v.

**ALCOA, INC., as Successor to and d/b/a
Reynolds Metals Company, d/b/a
Lake Charles Carbon.**

**Civil Action No. 03–1055–C–M2.**

United States District Court,
M.D. Louisiana.

July 19, 2006.

Howard E. Sinor, Jr., Tina Crawford White, Gordon, Arata, McCollam, Duplantis & Eagan, New Orleans, LA, Thomas M. Mueller, Steven J. Meiner, Mayer, Brown, Rowe & Maw, New York, NY, for Consolidated Aluminum Corporation.

Andrew J. Harrison, Jr., Harrison Law LLC, Baton Rouge, LA, James J. Reardon, Thomas G. Rohback, Leboeuf, Lamb, Greene

& MacRae, LLP, Hartford, CT, for Alcoa, Inc.

### RULING & ORDER

NOLAND, United States Magistrate Judge.

This matter is before the Court on the Motion for Sanctions Based on Spoliation of Evidence (R. Doc. 130) and the Request for Oral Argument (R. Doc. 131) on that motion filed by plaintiff/defendant-in-counterclaim, Consolidated Aluminum Corporation ("Consolidated"). Defendant/plaintiff-in-counterclaim, Alcoa, Inc. ("Alcoa"), has filed an opposition to this motion. (R. Doc. 168).

### FACTS & PROCEDURAL BACKGROUND

The factual background of this matter has been discussed in detail in prior rulings of the Court. In the present motion, Consolidated contends that Alcoa deleted relevant emails and other electronic data for years after it reasonably anticipated this litigation, and even after this litigation actually commenced, in violation of its affirmative duty to preserve all potentially relevant evidence. Specifically, Consolidated makes four arguments as to how Alcoa has allegedly spoliated evidence relevant to this matter: (1) Alcoa failed to implement a proper "litigation hold" upon reasonably anticipating litigation with Consolidated; (2) Alcoa failed to notify all personnel with relevant documents of the requirement to preserve their emails; (3) Alcoa failed to prevent the routine overwriting of relevant electronic evidence; and (4) Alcoa failed to preserve the documents of even its most significant witnesses.

According to Alcoa's supplemental discovery responses in this matter, Alcoa's counsel met with and/or participated in telephone conferences with four (4) individuals to establish a "document hold" in conjunction with its issuance of a demand letter to Consolidated in November 2002. Those individuals included: (1) Jim Schon, the Environmental Manager at the Lake Charles Carbon Company; (2) Ron Weddell, Remediation Project Manager; (3) Greg Kraft, Environment, Health & Safety Director, Primary Metals; and (4) Eric Klink, Alcoa's environmental consultant employed by MFG. *See*, Alcoa's Supplemental Discovery Responses dated January 19, 2006, attached to the Affidavit of Tina Crawford White as Exhibit A to the present motion.

Consolidated contends that Alcoa's list of four individuals is "woefully inadequate" because numerous other Alcoa employees were involved in the investigation that led to the drafting of Alcoa's demand letter and were involved with or had information regarding environmental issues at the plant. In particular, Consolidated points out that Alcoa failed to confer about the "litigation hold" with Philip Blair ("Mr. Blair"), the plant manager at the time the demand letter was sent. Further, with respect to the four individuals listed, Consolidated argues that Alcoa should not only have informed them to preserve emails pursuant to the "litigation hold," but it also should have preserved backup tapes for those individuals' emails for the six months preceding November 2002.

Finally, Consolidated contends it was only after it propounded discovery to Alcoa in April 2005 that Alcoa expanded its preservation efforts and contacted eleven (11) additional individuals to request that they begin preserving relevant documents and emails. This group of eleven individuals did not include Mr. Blair, whom Consolidated views as one of the "key players" in this litigation, given that Alcoa made a special request to depose Mr. Blair during the early stages of discovery.[1] Consolidated also asserts that Alcoa's suspension of its janitorial email deletion policy and maintenance of backup tapes as of May 27, 2005, only after receiving Consolidated's April 2005 discovery requests, was

---

1. Consolidated notes that, in the early stages of this litigation before documents had been exchanged, Alcoa sought to depose Philip Blair, John Ogea, and Garland Poole, employees and former employees of Alcoa. Alcoa asserted that it was necessary to take those depositions early because the three witnesses were over 52 years of age, and their memory of events is critical to Alcoa's defense and its counterclaim in this matter. *See*, Memorandum of Defendant/Counterclaimant Alcoa Inc. in Opposition to Consolidated's Motion to Quash, Motion for Protective Order, and Motion to Stay all Discovery, R. Doc. 52.

performed far too late and with knowledge that countless relevant emails had been destroyed since the time litigation was reasonably anticipated.

Because of Alcoa's alleged conduct, Consolidated contends that it is entitled to certain adverse inference instructions in its favor and to an award of the costs and reasonable attorneys' fees incurred in its repeated attempts to obtain documents that Alcoa has purportedly destroyed and in its efforts to prosecute this motion.

## LAW & ANALYSIS

Neither the Fifth Circuit Court of Appeal nor any district court within the Fifth Circuit has had the opportunity to directly address the standards for preservation of electronic evidence and applicable sanctions where such evidence has been spoliated. The Court must therefore look to persuasive authority from other jurisdictions in deciding the present motion. The cases which have been recognized as setting the benchmark standards for modern discovery and evidence-preservation issues are the series of *Zubulake* decisions out of the Southern District of New York. *See, Zubulake I–IV.*[2]

■ According to *Zubulake IV*, spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y.2003). The spoliation of evidence "relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Id.* However, the determination of a proper sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is determined on a case by case basis. *Id.*

■ A party can only be sanctioned for destroying evidence that it had a duty to preserve, and such duty "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Id.* However, a corporation, upon recognizing the threat of litigation, need not preserve "every shred of paper, every e-mail or electronic document, and every backup tape." *Id.* at 217.[34] Instead, the duty to preserve extends to any documents or tangible things made by individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses." *Id.* at 218. The duty also extends to documents prepared *for* those individuals and to information that is relevant to the claims and defenses of *any* party, or which is "relevant to the subject matter involved in the action." *Id.* Thus, the duty to preserve extends to those employees likely to have relevant information, *i.e.* the "key players" in the litigation. *Id.*

■ In sum, the scope of a party's preservation obligations can be described as follows:

> Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a "litigation hold" to ensure the preservation of relevant documents. As a general rule, that litigation hold does not apply to inaccessible backup tapes (*e.g.,* those typically maintained solely for the purpose of disaster recovery), which may continue to be recycled on the schedule set forth in the company's policy. On the other hand, if backup tapes are accessible (*i.e.,* actively used for information retrieval), then such tapes *would* likely be subject to the litigation hold.

*Id.* at 218.

■ In the event evidence is spoiled, the court may exercise its discretion to im-

---

**2.** The actual cites for the *Zubulake* rulings are as follows: *Zubulake v. UBS Warburg, LLC*, 217 F.R.D. 309 (S.D.N.Y.2003); *Zubulake v. UBS Warburg, LLC*, 230 F.R.D. 290 (S.D.N.Y.2003); *Zubulake v. UBS Warburg, LLC*, 216 F.R.D. 280 (S.D.N.Y.2003); *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212 (S.D.N.Y.2003); and *Zubulake v. UBS Warburg, LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004).

**3.** The *Zubulake* court recognized that a requirement that a corporation retain every shred of paper, e-mail, electronic document and back-up tape would "cripple large corporations ... that are always involved in litigation." *Id.* at 217.

**4.** As a general rule, a party need not preserve all backup tapes even when it reasonably anticipates litigation. *Id.*

pose sanctions upon the responsible party, and the seriousness of the sanctions imposed by a court as a result of spoliation of evidence depends upon: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party. *Menges v. Cliffs Drilling Co.*, 2000 WL 765082, *6 (E.D.La.2000). In exercising its discretion, a court may exclude the spoiled evidence or allow the jury to infer that the party spoiled the evidence because the evidence was unfavorable to the party's case. However, these sanctions are considered drastic, and courts generally try to avoid imposing them when lesser sanctions are available.[5]

■■■■ A party seeking the sanction of an adverse inference instruction based upon the spoliation of evidence must establish the following three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind," and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Zubulake IV*, at 220.[6] In addition, the Fifth Circuit only permits an adverse inference

sanction against a destroyer of evidence upon a showing of "bad faith" or "bad conduct." *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191 (5th Cir.2005). *King v. Illinois Cent. R.R.*, 337 F.3d 550 (5th Cir.2003); *United States v. Wise*, 221 F.3d 140, 156 (5th Cir.2000).[7] Thus, for Consolidated to receive an adverse inference instruction, it must show that Alcoa not only destroyed evidence relevant to its claims and defenses, but also that Alcoa acted intentionally and in "bad faith" in doing so. *King*, at 556.

## I. Has Alcoa destroyed evidence which it had a duty to preserve?

■■■ As noted above, Alcoa indicated, in its supplemental discovery responses, that, at the time it sent the November 2002 demand letter to Consolidated,[8] it requested that four (4) individuals transfer their relevant emails into personal folders to prevent their automatic deletion. Consolidated contends that two of Alcoa's key witnesses, Philip Blair, the plant manager at the Lake Charles facility, and John Ogea, a line level production foreman, as well as other Alcoa employees who were involved in the investigation which led to the drafting of the demand letter should have also been advised to preserve relevant emails.

The issue with regard to Mr. Ogea's emails is now moot, as Alcoa has represented to the Court that all emails related to his employ-

---

5. Imposition of an adverse inference instruction has been recognized as a powerful tool in a jury trial since, when imposed, it basically "brands one party as a bad actor, guilty of destroying evidence that it should have retained for use by the jury." *Morris v. Union Pacific R.R.*, 373 F.3d 896, 900 (8th Cir.2004).

 The Court in *Zubulake IV* also elaborated on the practical impact of giving an adverse inference instruction. The Court pointed out that the giving of an adverse inference instruction often terminates the litigation in that it is "too difficult a hurdle" for the spoliating party to overcome. When a jury is instructed that it may "infer that the party who destroyed potentially relevant evidence did so 'out of a realization that the [evidence was] unfavorable[' to the other party], the party suffering this instruction will be hard pressed to prevail on the merits." The *Zubulake* court therefore concluded that the adverse inference instruction is an "extreme" sanction that should "not be given lightly." *Zubulake*, at 219–220.

6. When evidence is destroyed in bad faith, that fact alone is sufficient to demonstrate relevance. However, when the destruction is negligent, relevance must be proven by the party seeking sanctions. *Id.*

7. Although Consolidated primarily has relied upon cases from outside the Fifth Circuit which apply a gross negligence standard for imposition of an adverse inference sanction, the Court must follow the Fifth Circuit's stricter standard requiring destruction in "bad faith."

8. The Court previously recognized, in its December 19, 2005 Ruling in this matter, that the November 2002 demand letter is the point in time when this litigation should have become "reasonably anticipated" by Alcoa. The propounding of a demand letter has been found to be the point when litigation should be reasonably anticipated in *Housing Rights Center v. Sterling*, 2005 WL 3320739 (C.D.Cal.2005).

ment with Alcoa have been produced with Alcoa's opposition to this motion.[9,10] However, in explaining why it did not advise Mr. Blair to preserve his emails, Alcoa states that Mr. Blair was a plant level employee with minimal interaction with the corporate level "key players." Alcoa also points out that, for every email sent and received by Mr. Blair, there was a corresponding recipient or sender, and thus, any emails sent to or received by the "key players," in which Mr. Blair participated, have been preserved, even though Mr. Blair's email box was deleted as a part of Alcoa's normal practice when Mr. Blair left the company in September 2003.

Alcoa also contends that much of the electronic data which Consolidated is seeking is from time periods prior to the existence and/or common use of email. For example, at the time of Reynolds' acquisition of the Lake Charles Facility from Consolidated in 1983 and through the mid–1990s, email either did not exist or was not commonly used. Thus, Alcoa cannot be held responsible for destruction of potentially relevant electronic evidence from that time period. In addition, Alcoa asserts that the only pertinent information Mr. Blair has with respect to this case relates to his "historical knowledge" of the facility, which can only be obtained through deposition testimony as to his memory of events, not through contemporary documents or emails.

Although Alcoa is now attempting to downplay Mr. Blair's role as it relates to this litigation, it admitted, when seeking permission from this Court to have his deposition taken early, that Mr. Blair's memory of events is "critical to Alcoa's defense and to its counterclaim." *See,* Memorandum of Defendant/Counterclaimant Alcoa, Inc. in opposition to Consolidated's Motion to Quash, Motion for Protective Order, and Motion to Stay all Discovery, R. Doc. 52. Alcoa noted that, if it were unable to take Mr. Blair's deposition at that time, it could lead to "severe prejudice" to Alcoa if some "untoward event" were to befall Mr. Blair. Alcoa further stated that Mr. Blair possesses "critical information about the raw materials, usage, manufacturing processes, and waste handling/disposal practices of Consolidated." *Id.*

 In the Court's view, these statements by Alcoa indicate that Mr. Blair is one of the "key players" in this litigation who was likely to have relevant information in his emails which Alcoa had a duty to preserve from the time this litigation became reasonably anticipated, even if he was a plant level employee who was not directly involved in the ongoing environmental investigation. In other words, the Court finds that Alcoa conceded, early on, that Mr. Blair is a "key player" in this litigation and is now attempting to rescind that statement because of its failure to instruct him to preserve evidence. The Court also finds unpersuasive Alcoa's argument that any information contained in Mr. Blair's emails has nevertheless been preserved because his emails to and from their designated "key players," Messrs. Schon, Weddell, Kraft, and Klink, have been preserved.[11] Given that the Court construes Mr. Blair himself to be a "key player," emails sent and received by him, other than those involving Messrs. Schon, Weddell, Kraft, and Klink, might have relevance to this matter and should have been preserved.

In addition, Alcoa's expansion of its "litigation hold" to include eleven (11) additional employees after receiving Consolidated's discovery requests in April 2005 likely came too late. If such individuals indeed possessed in-

---

**9.** Mr. Ogea has also executed an affidavit indicating that all emails related to his job were provided to Alcoa's counsel.

**10.** Furthermore, even if Consolidated asserts that Mr. Ogea's emails were somehow spoliated because they were not timely disclosed, the Court nevertheless finds that the emails lack sufficient relevance to this matter to impose a sanction for such delay. For example, Mr. Ogea's emails mostly involve equipment repairs and reports about the employees he supervised and lack meaningful information about the environmental issues in this litigation. The content of these emails supports Alcoa's decision not to include Mr. Ogea in its original "litigation hold."

**11.** The duty to preserve encompasses "any documents or tangible items *authored or made* by individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses." [Emphasis added.] *Broccoli v. Echostar Communications Corp.,* 229 F.R.D. 506 (D.Md.2005).

formation relevant to this suit, they should have been instructed to preserve such evidence back in November 2002, when the other four individuals, Messrs. Schon, Weddell, Kraft, and Klink, were advised to do so; when Consolidated's complaint was filed; or at the very least, as soon as Alcoa determined that they might have information relevant to this matter. As to whether the list of eleven additional individuals is adequate, the Court cannot make a specific determination but notes that, because Alcoa's initial disclosure dated February 28, 2005 identified approximately one hundred (100) individuals as being "likely to have discoverable information that Alcoa may use to support its claims and defenses," the Court finds it highly probable that instructing only eleven Alcoa employees to abide by the "litigation hold" in May 2005 is inadequate to fulfill its preservation obligations.

The Court also finds that Alcoa has potentially spoiled relevant evidence through its failure to override its standard document destruction policies when this litigation became reasonably foreseeable in November 2002. Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a "litigation hold" to ensure the preservation of relevant documents. *Zubulake IV*, at 218. According to Alcoa's supplemental discovery responses, it "prophylactically maintained backup tapes of [its] backup system following suspension of its janitorial procedures shortly following Consolidated's discovery requests [in April 2005]." Thus, Alcoa did not officially suspend its routine destruction policy until two and a half (2½) years after sending its demand letter to Consolidated and approximately twenty (20) months after Consolidated filed this action. At the very least, the emails of the eleven (11) individuals who were not advised until May 2005 to preserve their electronic data were lost during the time period when the routine destruction policy was still in effect.

Furthermore, even potentially relevant emails of the four individuals initially instructed to preserve electronic data in November 2002 were lost due to Alcoa's failure to immediately suspend its routine document destruction policy in November 2002.[12] Those four individuals were involved in any environmental assessment of the facility which occurred prior to sending the demand letter to Consolidated; thus, any emails concerning such investigatory work during the months immediately preceding November 2002 would have been preserved through the system's "backup" feature and maintained if the destruction policy had been immediately suspended in November 2002.[13]

Finally, Alcoa attributes its failure to institute a "litigation hold" on electronic data in November 2002 to the fact that it did not learn of the "previously concealed scope and magnitude of Consolidated's pollution" until it conducted interviews with a variety of current and retired employees after being served with Consolidated's complaint in September 2003. The flaw in this argument is that Alcoa's duty to preserve was triggered, not when it had actual knowledge of this litigation and its scope, but instead when it had constructive knowledge or should have known that certain information may be relevant to future litigation. In addition, even

---

12. In Alcoa's supplemental discovery responses, it described its routine email destruction policy as follows:

> Once every week, all messages older than (30) days in a user's Exchange mailbox are moved to a "System Cleanup" folder. At the same time, all messages older than fifteen (15) days (forty-five (45) days total) in a user's System cleanup folder are deleted and are no longer directly recoverable by the user.... In addition, Alcoa's disaster recovery system retains email for the trailing six (6) months.

Thus, it is possible that relevant emails for the six (6) months prior to November 2002 could have been retrieved, had Alcoa properly suspended its routine document destruction policy when it became aware of potential litigation with Consolidated in November 2002.

13. Consolidated also points out that several individuals, other than the four individuals initially instructed to preserve emails, appear to have also been involved in Alcoa's environmental assessment of the facility prior to sending its demand letter, including Mr. Blair, Garland Poole, Paula Poole, Kirk Gribben, Robert Bear, Robert Winnes, Robert Lenney, Ralph Waechter, Eric Matzner, Steve Leger and Matt Wickham. However, the emails of these individuals either were not preserved until 2005 or have never been preserved.

assuming Alcoa did not have actual or constructive knowledge of the relevance of certain emails until September 2003, its "litigation hold," except with respect to the four individuals initially instructed to preserve emails, was not imposed until over a year and a half later, in May 2005. Thus, based upon the standards set forth in *Zubulake IV*, the Court finds that Alcoa failed to preserve electronic evidence that it had a duty to preserve.

## II. Should the requested adverse inference instructions be imposed as a sanction for Alcoa's failure to preserve evidence?

·As noted above, once it is determined that a party has destroyed evidence that it had a duty to preserve, courts must determine what sanctions, if any, to impose. In the present case, Consolidated seeks, as a sanction, a number of adverse inference jury instructions, including the following: (1) that Consolidated fully disclosed to Reynolds all pollution, waste and environmental concerns known to Consolidated to have been caused, created or disposed at the Lake Charles Facility; (2) that Mr. Blair and other Alcoa employees whose documents were not preserved were aware of and conveyed to others within Reynolds any facts that Consolidated failed to disclose in connection with the October 1996 Purchase Agreement; (3) that Alcoa

had knowledge at the time it acquired the facility in 2000 of any pollution and waste caused, created or disposed of at the Facility; and (4) that neither Alcoa nor Consolidated had an obligation to conduct remediation at the facility, but that the investigation and work performed by Alcoa at the Facility was driven by Alcoa's business interests and a desire to pursue Consolidated for cost recovery and for a Purchase Price Adjustment claim under the Purchase Agreement.

For Consolidated to receive any inferences, it must establish the following: (1) that Alcoa had an obligation to preserve the evidence at issue at the time it was destroyed, which has already been established above; (2) that the evidence was destroyed by Alcoa with a "culpable state of mind," and (3) that the destroyed evidence was "relevant" to Consolidated's claims or defenses such that a reasonable trier of fact could find that it would support those claims or defenses.

### (A) Has Consolidated demonstrated that the evidence was destroyed by Alcoa with a "culpable state of mind?"

 The Court does not find that sufficient evidence has been presented indicating that Alcoa acted in bad faith or with a "culpable state of mind" in failing to preserve the electronic evidence at issue.[14] For the

---

**14.** As noted previously, although courts in other circuits may permit the imposition of an adverse inference instruction based upon the gross negligence of the spoliating party, the Fifth Circuit has held that such a sanction may only be imposed upon a showing of "bad faith" or intentional conduct by the spoliating party. *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191 (5th Cir.2005). *King v. Illinois Cent. R.R.*, 337 F.3d 550 (5th Cir.2003); *United States v. Wise*, 221 F.3d 140, 156 (5th Cir.2000); *Lafayette Insur. Co. v. CMA Dishmachines*, 2005 WL 1038495, *3, 2005 U.S. Dist. LEXIS 8026, *9–*10 (E.D.La. April 25, 2005)(A party is not entitled to an adverse inference unless the party can show that its adversary "intentionally and in bad faith disposed of the evidence").

In addition, while Consolidated has cited two cases out of the Eastern District of Louisiana for the proposition that bad faith can be implied from negligence where the spoliating party is on notice of the relevance of the evidence when it was destroyed, such cases are distinguishable from the present matter because they do not involve electronic evidence which is routinely

destroyed through document destruction procedures and instead involve types of tangible evidence which were negligently destroyed or lost.

For example, in *Short v. Anangel Spirit Compania Naviera, S.A.*, 2002 WL 31740707 (E.D.La. 2002), the misplaced evidence was a videotape of the plaintiff's arthroscopic surgery, and the defendants contended that the missing videotape would show the actual condition of the plaintiff's left shoulder and the extent of any anatomical damage which needed repair. Thus, the defendants provided some information to the Court regarding the information that the videotape contained and demonstrated that the plaintiff was on notice of the relevance of the misplaced evidence. (As discussed below, the Court is uncertain whether the allegedly spoiled evidence in the present matter is actually and directly relevant to Consolidated's claims.) Even considering this relevance, however, the Eastern District did not impose an adverse inference instruction in *Short* because they found that the defendants failed to definitively demonstrate that the plaintiff was the last person in possession of the tape, "much less

spoliator to have a "culpable state of mind," it must act with fraudulent intent and a desire to suppress the truth. Such state of mind is not present where the destruction is a matter of routine or where employees have simply deleted emails because they had no legitimate business reason, even though the contents of the communications might, at a later date, have some relevance to a lawsuit. *Concord Boat Corp. v. Brunswick Corp.,* 1997 WL 33352759 (E.D.Ark.1997). Typically, the giving of an adverse inference instruction has been upheld where the facts of the case are extreme, such as where the destroyed evidence was the very automobile that was the subject of the products liability action. *Id.,* citing *Dillon v. Nissan Motor Co.,* 986 F.2d 263 (8th Cir.1993).[15]

 In the present case, upon propounding its demand letter in November 2002, Alcoa took steps to apprize those employees which it considered to be "key players" at the time, and who were involved in the ongoing environmental investigation, to preserve their relevant emails. Thus, Alcoa established a "document hold," at least with respect to those individuals which it deemed to have relevant information at the time, in the Winter of 2002.[16][17] Given the scope of the

---

[did] they make an adequate, specific allegation of bad faith on plaintiff's part in connection with spoliation of any evidence." Thus, although the Eastern District mentioned that bad faith could be inferred, it ultimately held that, because the defendant did not make an adequate and specific allegation of bad faith, it had not met the required standard that would entitle it to an adverse inference instruction.

In the other Eastern District case cited by Consolidated, *Tantivy Communications, Inc. v. Lucent Technologies,* 2005 WL 2860976 (E.D.Tex. 2005), the relevance of the spoiled evidence, interoperability testing documents, was certain (i.e. the documents related to whether the defendant had infringed the plaintiff's patents during its testing of the products at issue in the case). In addition, the defense expert had relied upon the spoiled documents in his expert report, further demonstrating the relevance and importance of the documents. The court found that the evidence was spoliated because of its untimely disclosure and that the plaintiff had been prejudiced by the timing of the disclosure, in that it had spent considerable sums of money developing its infringement analysis. The disclosures came well after expert discovery had been concluded, and the trial date had arrived. The court found that, if the documents had been timely disclosed as required, the plaintiff could have planned and conducted its discovery based upon the documents, and the plaintiff's experts could have timely reviewed them. The court specifically found that the defense attorneys had hidden documents, misrepresented the existence of documents, and allowed the destruction of documents, and the court held that it would issue "an appropriate remedy once it ha[d] considered the evidence ... and evaluated the materiality of the information and the prejudice caused by its late production." Thus, the Eastern District did not impose an adverse inference instruction based upon the defendant's conduct. Furthermore, even if it had, *Tantivy* is distinguishable from the present matter in that the Court was aware of the direct relevance of the spoiled documents to the litigation and therefore could tailor an appropriate adverse inference instruction. By contrast, and as discussed in detail below, the Court is not aware of whether the destroyed e-mails at issue in the present case have any direct relevance to Consolidated's claims and particularly to the adverse inferences proposed by Consolidated.

15. Courts have also found sufficient prejudice to impose an adverse inference instruction where the destroying party has selectively retained relevant evidence and has used retained evidence in prior disputes to its advantage. *E Trade Securities,* at 592.

See also, *Housing Rights Center v. Sterling,* 2005 WL 3320739 (C.D.Cal.2005)(Court considered other "egregious conduct during the course of the litigation" in concluding that the spoliating party had acted in bad faith in destroying evidence); *U.S. v. Philip Morris USA, Inc.,* 327 F.Supp.2d 21 (D.D.C.2004)(where the Government requested an adverse inference instruction against Philip Morris; however, the court concluded that such a far-reaching sanction was inappropriate. Specifically, the court found that the choice of sanctions should be guided by the "concept of proportionality" between the offense and the sanction, and the sanction sought by the government "simply cast[] too wide a net."); *Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest.,* 212 F.R.D. 178 (S.D.N.Y.2003)(Sanctions were imposed where the spoliating party had failed to comply with its discovery obligations from the very outset of the litigation by failing to retrieve deleted emails and to implement a document retention policy, misrepresenting to the court information regarding the production of documents, willfully delaying and frustrating a court-ordered deposition, and replacing computers after agreeing to have a forensic computer expert retrieve emails from those computers).

16. According to Alcoa, Mr. Blair and other plant level employees were not involved in the ongoing environmental investigations and therefore were not originally deemed to have information directly relevant to the environmental issues in this matter.

information allegedly known to Alcoa at that time, the Court finds that Alcoa's original "litigation hold" is not so unreasonable as to demonstrate bad faith. At that time, litigation was only "reasonably foreseeable," and Alcoa was not required to preserve every shred of paper but only those documents of which it had "actual knowledge" that they would be material to future claims.[18]

Alcoa was later served with Consolidated's complaint on September 15, 2003, and after that, conducted further discovery and investigation, through which it became aware of the scope of the environmental issues in this litigation.[19] It should be noted that Mr. Blair's employment with Alcoa ended the same month as Consolidated filed its complaint; thus, even if Alcoa became of aware of Mr. Blair's possession of relevant information at the time the complaint was filed, there were probably very few relevant emails of Mr. Blair, if any (other than those on back-up tapes), that could have been preserved.

In addition, Alcoa has represented to the Court that it did not become aware that other individuals had potentially relevant information which needed to be preserved until it received Consolidated's seventy-two discovery requests in April 2005. At that time, Alcoa expanded its "litigation hold" to include additional individuals, preserved an "email 'snapshot' of all of Alcoa North America," and maintained monthly backup tapes for all individuals in the expanded hold, including those "key players" in the initial hold. Given that Alcoa imposed these additional measures promptly within the time period it had to respond to Consolidated's discovery requests,[20] the Court does not find that there is sufficient evidence that Alcoa acted in bad faith in failing to preserve such electronic evidence earlier.[21]

Moreover, to the extent that the emails which are most relevant to the environmental issues in this litigation are those in which the originally identified four "key players" participated, it is unlikely that Consolidated will be significantly prejudiced by Alcoa's failure to timely preserve the emails of other employees since Consolidated will be able to obtain most, if not all, of the relevant information from the preserved emails of the

17. According to Alcoa's supplemental discovery responses provided on January 19, 2006 in accordance with the Court's December 19, 2005 Ruling (attached as part of "Appendix 1" to Consolidated's present motion), the original four individuals were instructed to save their e-mails to personal folders, rather than onto the exchange server itself, so as to prevent the inadvertent loss of e-mails through the company's routine destruction policies. Items in an employee's personal folder or "pst file" are not subject to Alcoa's routine destruction process.

Alcoa also indicated that it produced the relevant e-mails of those four individuals from the date the "litigation hold" was imposed in the Winter of 2002. Additionally, it produced emails predating the "litigation hold" that those e-mail users had saved on their own. For example, Mr. Schon's produced e-mails dating back to June 2001; Mr. Weddell's e-mails date back to April 1999; Mr. Kraft's e-mails date back to May 2000; and Mr. Klink's e-mails date back to November 1996.

18. *See, The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production* (September 2005)(The obligation to preserve electronic data and documents requires reasonable and good faith efforts to retain information that may be relevant to pending or threatened litigation. However, it is unreasonable to expect parties to take every conceivable step to preserve all potentially relevant data).

19. Specifically, Alcoa contends that it interviewed a variety of current and retired employees who could explain what was going on with the Lake Charles facility prior to and after Reynold's acquisition in 1983. According to Alcoa, it learned for the first time, through these interviews, the "previously concealed scope and magnitude of Consolidated's pollution," and recognizing that the pollution dealt with events prior to Alcoa's control of the facility, Alcoa arranged for the depositions of Mr. Blair and Mr. Ogea to preserve their testimony.

20. Some of those additional individuals had also preserved historical emails that otherwise would have been deleted through Alcoa's routine destruction policy, and those emails have been produced to Consolidated or designated as privileged.

21. Furthermore, at least some of the electronic evidence which Consolidated is seeking relates to emails in and around the time frame of the May 2000 deal between Alcoa and Reynolds. Such emails were destroyed or overwritten within six months after the May 2000 date, and Alcoa had no duty to preserve such documents as the present litigation was not reasonably anticipated at that time.

original four "keyplayers."[22] Thus, even if Alcoa failed to preserve all emails that it had a technical duty to preserve, the likelihood that information relevant to this matter is contained in other sources, which have been preserved and produced, weighs in favor of finding that Alcoa only acted negligently rather than in bad faith. For example, as noted by Alcoa, beyond those emails of the "key players" already produced, the relevant information that Mr. Blair can provide is in the form of testimony as to his memory of events prior to 1983 while Consolidated controlled and operated the Lake Charles facility since email did not exist at that time.

In sum, Consolidated has failed to convince the Court that the email deletions at issue were motivated by "fraud or a desire to suppress the truth" or that Alcoa "intended to prevent use of the [emails] in this litigation." *Concord*, at *6. At most, Consolidated has shown that Alcoa negligently failed to preserve emails, which might have had some relevance to this lawsuit, by failing to timely inform employees of their duty to preserve. The failure to prove that Alcoa acted intentionally and with bad faith in destroying the electronic evidence at issue "weighs heavily against the awarding of an adverse inference jury instruction." *Id.* However, even assuming that bad faith could be inferred from Alcoa's negligent destruction of emails, the Court nevertheless finds that Consolidated is not entitled to the requested adverse inference instructions because it has failed to provide sufficient evidence that the destroyed

emails were "relevant" to Consolidated's claims and defenses as alleged in its proposed adverse inferences.[23]

**(B) Consolidated's failure to sufficiently demonstrate the "relevance" of the destroyed emails to its claims and defenses:**

The "relevance" factor of the adverse inference analysis is generally broken down into three subparts: (1) whether the evidence is relevant to the lawsuit; (2) whether the evidence would have supported the inference sought; and (3) whether the non-destroying party has suffered prejudice from the destruction of the evidence. *Id.* at *7. The party seeking the sanction of an adverse inference "must adduce sufficient evidence from which a reasonable trier of fact could infer that the 'destroyed or [unavailable] evidence would have been of the nature alleged by the party affected by its destruction.'" *Residential Funding Corp. v. Degeorge Financial Corp.*, 306 F.3d 99 (2nd Cir.2002).[24] In other words, some extrinsic evidence of the content of the emails is necessary for the trier of fact to be able to determine in what respect and to what extent the emails would have been detrimental. *Concord*, at *7. Thus, before an adverse inference may be drawn, there must be some showing that there is in fact a nexus between the proposed inference and the information contained in the lost evidence. *Id.*

22. For example, Alcoa indicates that, through production of the emails of the four individuals subject to the initial "litigation hold," 259 emails authored by Mr. Blair, 1,364 emails received by Mr. Blair, and 847 emails on which Mr. Blair was copied, have been produced to Consolidated. Mr. Blair's affidavit also indicates that he had no meaningful involvement in the environmental investigations of the Facility relevant to this matter; thus, to the extent any of his emails were relevant to the environmental issues in this case, it is very likely that they involved the four "key players" subject to the initial "litigation hold" and have been produced.

23. Since Alcoa's spoliation has not been deemed willful, Consolidated must demonstrate that a reasonable trier of fact could find that the missing emails support Consolidated's claims. "This corroboration requirement is even more necessary where the destruction was merely negligent,

since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would have been harmful to him." *Zubulake IV*, at 221.

24. *See also, Hamre v. Mizra*, 2005 WL 1083978 (S.D.N.Y.2005)(In order for the sanction of adverse inference to be imposed, some evidence must be presented corroborating the assumption that the missing evidence would have been favorable to the plaintiff's case); *Chan v. Triple 8 Palace, Inc.*, 2005 WL 1925579 (S.D.N.Y.2005)("Relevant" in this context means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence. Rather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction).

■ Although Consolidated has generally asserted that the destroyed information is relevant to this litigation "based simply on the time frame and the individuals involved," a court cannot infer that destroyed documents would contradict the destroying party's theory of the case, and corroborate the other's party's theory, simply based upon temporal coincidence. While Consolidated is not held to "too specific a level of proof" regarding the destroyed documents, it must provide some evidence that the documents would have aided it in the manner alleged in their inferences in order for such sanction to be imposed.[25]

Thus, because Consolidated has failed to demonstrate that Alcoa willfully destroyed the electronic evidence at issue and has failed to offer any extrinsic evidence establishing that the lost evidence would have supported Consolidated's claims in the manner set forth in its proposed adverse inferences, it would be inappropriate for the Court to give any adverse inference instructions to the jury. *Zubulake*, at 222; *Concord*, at \*7.[26]

Finally, as noted previously, in most instances where prejudice to the non-spoliating party has been found to have occurred, the prejudice was readily apparent. *See, Dillon, supra.* In this case, even if relevant emails were deleted, it is not clear to the Court whether Consolidated would suffer any significant prejudice as a result. Consolidated should be able to obtain the great majority of

information relevant to its claims from the emails of the original four "key players" instructed to preserve evidence and through the documentary evidence produced. In other words, even assuming every email deleted during the time period in question had some relevance to this lawsuit, it is doubtful that Consolidated will be sufficiently prejudiced in its ability to put on its case to warrant an adverse inference instruction, considering the overwhelming amount of documentary evidence and emails already produced by Alcoa in this matter.[27]

### III. *Alternative Sanctions:*

■ Although adverse inference instructions are not warranted in this case, the Court nevertheless finds that Alcoa's conduct in negligently failing to preserve electronic evidence should not go unpunished.[28] Accordingly, the Court will order that Alcoa bear Consolidated's costs for re-deposing certain witnesses for the limited purpose of inquiring into issues raised by the destruction of evidence and regarding any newly discovered emails. In particular, if such depositions are desired, Alcoa will be ordered to pay the costs of re-deposing Mr. Blair, Mr. Ogea, the eleven individuals whose emails were not preserved until May 2005, and any other employees of Alcoa later determined to be "key players" in this litigation whose emails have not been preserved. Consolidated's request to serve additional discovery

---

25. For example, parties sometimes attempt to demonstrate the relevance of deleted emails by providing copies of other emails suggesting that the deleted emails were relevant. However, the non-spoliating party must demonstrate that the deleted emails had more than "tangential relevance" to its claims for an adverse inference instruction to be imposed. *Concord*, at \*7. Courts will not make an "inferential leap" that, because some relevant emails are in existence, the deleted emails must have been relevant also. *Id.*

See also, *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162 (S.D.N.Y.2004)(The non-spoliating party was denied an adverse inference instruction where the substance of the deleted communication was only described in the most general terms).

26. It is inappropriate to give an adverse inference instruction based upon speculation that the deleted emails would have been unfavorable to

Alcoa's case. Without some evidence, direct or circumstantial, of the unfavorable content of the deleted emails, the Court simply cannot justify giving the requested adverse inference instructions. *Id.*

27. Alcoa has produced over one million pages of documents to Consolidated, specifically including but not limited to: (1) all documents related to the 1983 Asset Purchase Agreement between Consolidated and Reynolds; (2) all of its transaction files relating to its acquisition in 2000 of Reynolds; (3) all of the files from its environmental consultant; (4) the documents at the Facility archive; and (5) the original emails of the "key players."

28. Though the nature of the sanction depends in part on the state of mind of the destroyer, some remedy may be appropriate even where the destruction is merely negligent. *Chan v. Triple 8 Palace, Inc.*, 2005 WL 1925579 (S.D.N.Y.2005).

relating to the electronic evidence which was not preserved will also be granted. Finally, Consolidated will be awarded the reasonable costs and attorneys' fees it has incurred in bringing this motion and in investigating and attempting to obtain the discovery at issue.[29] Because the Court is able to issue a ruling on Consolidated's motion based upon the parties' written briefs, Consolidated's request for oral argument on its motion for sanctions will be denied.

Accordingly;

**IT IS ORDERED** that the Motion for Sanctions Based on Spoliation of Evidence (R. Doc. 130) is hereby **GRANTED IN PART,** in that Consolidated Aluminum Corporation is entitled to the alternative sanctions set forth above, and **DENIED IN PART,** in that adverse inference instructions will not be given in this matter.

**IT IS FURTHER ORDERED** that the Request for Oral Argument (R. Doc. 131) related to Consolidated's motion for sanctions is hereby **DENIED.**

---

**29.** Where a party to litigation has destroyed relevant evidence, monetary sanctions have been awarded to cover the opposing party's costs incurred in investigating the discovery abuses and related motions. *Housing Rights Center v. Sterling,* 2005 WL 3320739 (C.D.Cal.2005).

*See also, Turner v. Hudson Transit Lines,* 142 F.R.D. 68 (S.D.N.Y.1991)(Even when rejecting an adverse inference, courts impose monetary sanctions for the destruction of evidence. Like an adverse inference, an award of costs serves both punitive and remedial purposes: It deters spoliation and compensates the opposing party for the additional costs incurred. Such compensable costs may arise either from the discovery necessary to identify alternative sources of information, or from the investigation and litigation of the document destruction itself); *U.S. v. Philip Morris USA, Inc.,* 327 F.Supp.2d 21 (D.D.C. 2004)(A monetary sanction was held to be appropriate where the court had no way of knowing what, if any, value the destroyed emails had to the plaintiff's case, and, because of the absence of that knowledge, it was impossible for the court to fashion a proportional evidentiary sanction that would accurately target the discovery violation. Despite that, the court found that it was essential that the defendants' conduct be deterred, and that the amount of the monetary sanction fully reflect the reckless disregard and gross indifference displayed by the defendants toward their discovery and document preservation obligations).